## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **DONALD J. WOLFE, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No.:** |
| **v.** ) | |
| ) | **COMPLAINT** |
| **INTERMECCANICA** ) | |
| **INTERNATIONAL, INC.,** ) | **(Lemon Law/Magnuson Moss** |
| ) | **Warranty Act/Breach of Warranty** |
| **and** ) | **Claim)** |
| ) | |
| **ELECTRAMECCANICA US,** ) | |
| ) | |
| **and** | |
| | |
| **AUTO EUROPE, Inc. -- d.b.a .--** | |
| **INTERMECCANICA – US,** | |
| | |
| **Defendants.** | |

## COMPLAINT

DONALD J. WOLFE, JR. ("Plaintiff"), by his attorneys, KIMMEL &

SILVERMAN, P.C., alleges the following against Intermeccanica – US and

Canada (Intermeccanica"), Electrameccanica - US and Canada

("Electrameccanica") and Auto Europe, Inc. ("Auto Europe")(collectively

"Defendants").

### INTRODUCTION

1.      Plaintiff is an adult individual, and a citizen and legal resident of the

State of

Delaware.

## THE DEFENDANTS

2.      Defendant, Intermeccanica International, Inc., is a Canadian

corporation ("Intermeccanica")  headquartered in Canada at 39 Braid Street,

New Westminster, BC V3L 3P2, Canada, and maintaining  its U.S.

Headquarters at 1 Woodward Avenue, Detroit, MI 48226. Intermeccanica is

subject to service at either or both addresses. Intermeccanica International,

Inc. is and since October of 2017 has been, a subsidiary of

Electrameccanica.

3.      Defendant Electrameccanica is the parent of Intermeccanica.  It is

headquartered in Canada at 8057 North Fraser Way, Burnaby, British

Columbia, BC V5J 5M, and is headquartered in the United States at 17892

Gothard St, Huntington Beach, CA  92647. It is subject to service of process

at either or both addresses.

4.      Defendant, Auto Europe, Inc., ("Auto Europe") is a Michigan

corporation headquartered at 33816 Woodward Avenue, Birmingham,

Michigan 48009.  It also maintains offices at 877 S. Eton, Birmingham, MI

480090. It may be served at either or both of these addresses.

5.      Upon information and belief, Auto Europe is the authorized U.S.

representative of Intermeccanica and serves as the United States distributor

for Intermeccanica International, Inc. It does business using the trade name

Intermeccanica – US, selling and distributing Intermeccanica vehicles in the

United States, and markets itself as Intermeccanica-US with the

"Intermeccanica Showroom – Auto Europe" located at the registered address

of Auto Europe, Inc.

6.    Auto Europe's website

(https://www.autoeuropeservicesales.com/about-us) states:

[I]n the mid 1980's … Auto Europe … moved to its current location in Birmingham, Michigan in 1995. Originally, the building on Woodward Avenue served as both the service and sales center. As the business grew, Auto Europe moved its service facility to another location less than one mile away on Eton Street.

In 2001 Auto Europe added The Morgan Motor Company and Lotus Cars to its new vehicle lines. In 2020 we became the US distributor for Intermeccanica International.

7.    Electrameccanica is the parent company of Intermeccanica. It states on

its website:

About Electrameccanica Vehicles Corp.
Electrameccanica Vehicles Corp. (NASDAQ: SOLO) is a Canadian designer and manufacturer of environmentally efficient electric vehicles (EVs)…

Intermeccanica, a subsidiary of Electrameccanica, has successfully been building high-end specialty cars for 61 years. For more information, please visit www.electrameccanica.com.
See https://www.electrameccanica.com/company-transitions-to-oem-status-with-commercial-and-consumer-deliveries-of-flagship-solo-ev/

8.    Upon information and belief, Defendants, Intermeccanica – US and

Intermeccanica International, Inc. are the ultimate manufacturers of the

vehicle at issue herein and the manufacturer of that vehicle for purposes of the

Delaware Lemon Law and other substantive laws applicable to this case.

## THE PRODUCT

9.     On or about February 12, 2021, Plaintiff purchased a new 2021

Intermeccanica 1959 Porsche 356 Convertible Replica (hereinafter  the

"vehicle") manufactured and warranted by the Defendants, bearing the VIN

MI9709A175C010821.

10.     The 2021 Intermeccanica is a 1959 Porsche 356 Replica.  Neither the

vehicle nor any of the Defendants are legally affiliated with Porsche Cars

North America.

11.     Upon information and belief, Intermeccanica International, Inc.

manufactures and/or obtains all of the vehicle's components and ships the

chassis and engine separately to the United States, whereupon Auto Europe

and or Intermeccanica – US assemble the vehicle in the United States under

the direction of Intermeccanica International, Inc. and/or Intermeccanica –

US.

12.     The completed vehicle was subsequently delivered to the Plaintiff at his

home address in Delaware, where, at all times during the events alleged in this

complaint, he was a resident.

13.    Based on the facts herein alleged, Intermeccanica International, Inc. and/or Intermeccanica – US, have vicarious liability for the acts of Auto Europe and Intermeccanica International.

14.    Based on the facts herein alleged, Electrameccanica and/or Electrameccanica – US, have vicarious liability for the acts of Auto Europe and Intermeccanica.

## THE CONTRACT

15.    The contract price of the vehicle, including registration charges, document fees, sales tax, finance and bank charges, but _excluding_ other collateral charges not specified, yet defined by the Lemon Law, totaled more than $97,155.00.  See Purchase Agreement attached as Exhibit "A".

16.    The vehicle was delivered by Defendants to Plaintiff in Delaware and as detailed herein, certain of the subsequent attempts at repair were carried out locally in significant part pursuant to Defendants' direct oversight.  In addition, in at least one instance, Auto Europe and Intermeccanica retrieved the vehicle from Plaintiff's home in Delaware to attempt additional repairs to the vehicle. The vehicle was driven on Delaware roads, was registered with the Delaware Department of Motor Vehicles, is titled in Delaware and bears Delaware license tags.

## JURISDICTION AND VENUE

17.    Subject matter jurisdiction is appropriate in this Court pursuant to 28

U.S. Code § 1332 as complete diversity exists as to all parties and the

amount in controversy is greater than $75,000.

18.    Personal Jurisdiction is authorized pursuant to 10 Del. C. § §

3104(c)(1)-(2), and 3104(d)(3).

19.    Venue in the District Court for the District of Delaware is appropriate

pursuant to 28 U.S. Code § § 1391(b)(2)-(3) and (c)(3) as a substantial part

of the events or omission giving rise to the claim occurred, or a substantial

part of property that is the subject of the action is situated, in Delaware.

## NUMEROUS DEFECTS FROM TIME OF PURCHASE

20.    After the vehicle manufacturing process was completed by the

Defendants in Michigan, the completed vehicle was shipped to Delaware from

Michigan. The vehicle arrived with a dead battery owing to a jammed brake

pedal that could not be released without physical manipulation by hand, and

that caused the brake lights to remain on even after the ignition was switched

off, draining the battery.  This was merely the first of many assembly

infirmities discovered by Plaintiff following its delivery, among them a

number of loose chassis and wheel bolts, an uncalibrated and inaccurate

speedometer, side windows that would not close completely, unadjustable and

misaligned side mirrors, loose dashboard switches, inoperable power window controls, loose door handles and an ill-fitting boot cover too small to be used.

21.    By far the most significant of these defects from the standpoint of safety and operability was the repeated failure of the vehicle's fuel injection system to operate properly, causing the engine suddenly to begin lurching while being driven and ultimately to stall out while still traveling at speed. In such circumstances resulting in the engine compartment being flooded with fuel. This problem arose almost immediately upon delivery, appearing on Plaintiff's maiden voyage in the vehicle to the Delaware Department of Motor Vehicles to secure registration papers.  On the way, the car began smelling of fuel, then began misfiring, lurching, and repeatedly stalled out while being driven on the highway and in the midst of high-speed traffic.

22.    Attempts to keep the engine from stalling while being driven in this and numerous instances to follow, required constant application of the gas pedal by the driver in order to keep the car running.  Inasmuch as the vehicle has a standard transmission, this circumstance, which occurred repeatedly despite Defendants serial efforts to correct the problem, posed a serious danger to the driver and passenger, and to others on the road.  It also resulted in a ruined clutch.

23.    Over the course of their attempts to explain and their efforts to correct this recurring and ultimately unresolved issue, both remotely and in person at their Michigan facility, representatives of Auto Europe confessed to Plaintiff that the vehicle had been delivered in the first instance without having been "vetted" properly, contrary to what they described as their usual practices, a circumstance they lamely attributed to the winter weather in Michigan at the time of the car's completion.  This curious fact was revealed only after the various defects, including that related to the fuel injection system, had been encountered by Plaintiff, thus confirming that the vehicle had been sold in what Defendants knew or should have known was a defective condition.

24.    Upon initially reporting the fuel injection issue to the Michigan Defendants, Plaintiff was advised to secure a local mechanic with whom they would attempt to coordinate remotely in order to readjust the fuel injection system.  The car accordingly was towed by Plaintiff to a mechanic known to Plaintiff in Chadds Ford, Pennsylvania, who indicated a willingness to attempt the repair.  Defendants provided a computer disk and a connecting cable by mail in order to assist the local mechanic with identifying the problem and recalibrating the system with their remote assistance.  It was while awaiting delivery of these analytical tools that the local mechanic inspected the vehicle

and discovered several bolts and connections under the chassis that had not been tightened properly and were now loose.

25.    This effort to repair the fuel injection problem remotely was unsuccessful. After conferring with the local mechanic, Defendants suggested that they send a truck to the mechanic's garage for transport back to their facility in Michigan to allow them to assess and address the problem. The vehicle was transported from the local mechanic's garage in Pennsylvania to Auto Europe's Michigan facility in March of 2021, approximately three months following its initial delivery.

26.    After several weeks, the Michigan Defendants reported that they had discovered that the fuel injection sensors had inexplicably failed, which they suggested was highly unusual, but that they had replaced the sensors and were now confident that the problem would not happen again. The vehicle was then transported from Michigan to Plaintiff's home in Delaware. Almost immediately thereafter, however, the identical problem arose again, forcing Plaintiff to turn around and struggle once again to get the vehicle home. Plaintiff promptly and with alacrity reported this to Defendants by telephone and was again instructed to find a local mechanic –- a different one this time — with whom they might again work remotely to reexamine and readdress the problem.

27.    Plaintiff as instructed had the vehicle towed to West Chester Foreign Auto, in West Chester, Pennsylvania.  The repair attempt was delayed when it was discovered that the Michigan Defendants had removed from the vehicle and retained at their Michigan facility the necessary computer disk and cable. Only after repeated requests were these items resent by Defendants to the new mechanic.

28.    After approximately three weeks at the West Chester Foreign Auto facility, their mechanics reported that they had worked with the Defendants remotely and under their direction and that they believed the problem had been rectified. Plaintiff retrieved the car from the most recently retained mechanic and drove it back to Wilmington without incident.  But the sputtering and stalling began the next time Plaintiff drove the vehicle, once again resulting in a harrowing return journey home.

29.    Plaintiff contacted the Michigan Defendants to express his frustration yet again and confirm his utter lack of confidence that the problem could or would be remedied.  He reported further that he did not wish to drive the car again, fearing that the seemingly  irremediable problem and the related and highly dangerous situation that might again pose. He requested directly that Defendants rescind the transaction, take back the car and return to him the purchase price.

30.    The Michigan Defendants demurred.  In an ensuing phone call, Auto Europe representatives proposed an alternative:  they offered to once again retrieve the car from Delaware, return it to their Michigan facility, completely tear out the fuel injection system and replace it with a carbureted fuel system. Upon conducting his own research, Plaintiff  concluded that the new system proposed brought with it issues of its own, issues that he had paid a premium, at Defendants urging, in order to avoid by installing a fuel injection system.

31.    Confronted  with  the  knowledge  that  Defendants  by  making  this proposal  had  essentially  confessed  that  the  vehicle  as  manufactured, assembled  and  delivered  was  unfit,  and  convinced  that  in  all  events Defendants were likely unable to perform such a project competently, Plaintiff advised the Michigan Defendants in a  promptly ensuing phone call that in his view they were now asking that he accept a vehicle fundamentally different from  the  one  they  had  sold  him,  and  reiterated  his  conviction  that  the appropriate resolution was for them to retrieve the vehicle and refund to him the purchase price.

32.    In the course of attempting to convince him that the carburetor system they were now proposing was by far the better of the two during this same call, the Auto Europe representatives stated that they had encountered so many problems  with  the  [SAME]  fuel  injection  system  installed  in  Plaintiff's

vehicle that they had stopped offering vehicles that employed that system for sale, and that they now sold only vehicles that employed a carburetor system. They did not say whether this policy had been adopted before or after Plaintiff signed his purchase contract for a vehicle running on a fuel injected engine. In either event, and despite the additional premium Plaintiff paid to install fuel injection at Defendants urging only several months before, this was the first time throughout the negotiation process and the extended ordeal surrounding the serial attempts to repair the vehicle that this fact was revealed.

## VEHICLE WARRANTIES AND BREACH

33.    In consideration for the purchase of said vehicle, Defendants issued to Plaintiff several warranties, guarantees, affirmations or undertakings with respect to the material or workmanship of the vehicle and/or remedial action in the event the vehicle fails to meet the promised specifications.

34.    That the above-referenced warranties, guarantees, affirmations or undertakings are/were part of the basis of the bargain between Defendants and Plaintiff.

35.    The parties' bargain includes multiple express warranties issued by Intermeccanica – US and Intermeccanica International, Inc as well as other guarantees, affirmations and undertakings as stated in Defendant's warranty materials and owner's manual, in addition to all implied warranties.

36.     More specifically, the purchase of the vehicle included a Intermeccanica International, Inc. 2-year/20,000 KM warranty. *See* warranty attached as Exhibit "B".

37.     Said vehicle and its components were sold subject to implied warranties of merchantability and fitness for a particular purpose, as well as other express and implied warranties.

38.     As a result of the ineffective repair attempts made by Defendants, itself or through its authorized dealer(s) and/or service centers, the vehicle is rendered substantially impaired.

39.     The subject vehicle is afflicted with certain defects, conditions and non-conformities which have been presented for repair including but not limited to the following:

| Date in | Date out | OOS | Mileage In | Issue(s) | Exhibit |
|---------|----------|-----|------------|----------|---------|
| 03/11/21 | 03/30/21 | 19 |  | -Fuel Injection Issue, brought in for running poorly<br>-Virtual consultation and pickup at Leader Sunoco, transferred to Michigan shop | C |
| 11/18/21 | 12/01/21 | 12 | 989 | -Vehicle running rough; Technician found fuel injectors to be maxed out, adjusted via laptop<br>-Squealing noise; Technician verified rear wheel bearing not tightened, adjusted<br>-Hood unable to open; Technician verified hood latch not aligned with loose hardware, adjusted | D |
| 04/29/22 |  |  | 1,044 | -Driveline noises; Technician created more separation between body and transmission, retorqued loose axle nuts.<br>-Untangled driver side seat belt<br>-Installed battery tender | E |

| 05/19/22 | 05/19/22 | 1 | | -Power windows stopped working suddenly; repaired | F |
| | 05/31/22 | | | -Issue with fuel injection system | |

40.    The vehicle continues to exhibit defects and non-conformities which substantially impair its use, value and/or safety.

41.    After a little more than a year of ownership Plaintiff has only been able to use the high price luxury vehicle only on rare occasion for less than 1,500 miles due to its faulty fuel injection system and other mechanical non-conformities.

42.    As the vehicle was purchased in Delaware and is registered in Delaware, the vehicle falls under the protection of the Delaware Lemon Law, Title 6, Chapter 50, and relief is hereby sought pursuant to said statute.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST INTERMECCANICA INTERNATIONAL, INC., ELECTRAMECCANICA and AUTO EUROPE, INC. -d.b.a- INTERMECCANICA – US– DELAWARE AUTOMOBILE WARRANTY ACT

43.    Plaintiff hereby incorporates all facts and allegations set forth in this Complaint by reference as if fully set forth at length herein.

44.    Plaintiff is a "Consumer" as defined by the Delaware Automobile Warranty Act (hereinafter "Lemon Law"), 6 Del. C §5001(2).

45.     Defendants are a "Manufacturer" as defined by the Delaware Lemon Law, 6 <u>Del</u>. <u>C</u>. §5001(6).

46.     Auto Europe Inc. is and/or was at the time of sale also a "Dealer" engaged in the business of buying, selling, and/or exchanging automobiles as defined by the Delaware Lemon Law, 6 Del. C. §5001(3).

47.     On or about February 12, 2021, Plaintiff took possession of the above-mentioned vehicle and at times thereafter experienced non-conformities as defined by The Lemon Law, which substantially impair the use, value and/or safety of the vehicle.

48.     The non-conformities violate the express written warranties issued to Plaintiff by Defendants.

49.     The Delaware Lemon Law, 6 <u>Del</u>. <u>C</u>. §5002 provides:

If a new automobile does not conform to the manufacturer's express warranty, and the consumer reports the nonconformity to the manufacturer or its agent or dealer during the term of the warranty or during the period of 1 year following the date of original delivery of an automobile to the consumer, whichever is earlier, the manufacturer shall make, or arrange with its dealer or agent to make, within a reasonable period of time, all repairs necessary to conform the new automobile to the warranty, notwithstanding that the repairs or corrections are made after the expiration of the term of the warranty or the 1-year period..

50.     Section 5003 of the Delaware Lemon Law provides:

a.  If the manufacturer, it's agent, or it's authorized dealer does not conform the automobile to any applicable express warranty by repairing or correcting any nonconformity after a reasonable number of attempts, the manufacturer shall either replace the automobile with a comparable new automobile acceptable to the consumer or repurchase the automobile from the consumer and refund to the consumer the full purchase price, including all credits and allowances for any trade-in vehicle; provided, however, that the consumer shall have the

unqualified right to decline a replacement automobile and to demand instead a repurchase.:

b.  In instances in which an automobile is replaced by a manufacturer under this section, said manufacturer shall accept return of the automobile and reimburse the consumer for any incidental costs, including dealer preparation fees, fees for transfer of registration, sales taxes or other charges or fees incurred by the consumer as a result of such replacement.  In instances in which an automobile which was financed by the manufacturer or its subsidiary or agent is replaced under this section, said manufacturer, subsidiary or agent shall not require the consumer to enter into any refinancing agreement for a replacement automobile which would create any financial obligations upon consumer beyond those created by the originally financing agreement.

c.  In instances in which a refund is tendered under this section, the manufacturer shall accept return of the automobile from the consumer and shall reimburse the consumer for related purchase costs, including sales taxes, registration fees and dealer preparation fees, less:

   (1) A reasonable allowance for the consumer's use of the automobile, not to exceed the full purchase price of the automobile multiplied by a fraction which consists of the number of miles driven before the consumer first reported the nonconformity to the manufacturer, its agent or dealer divided by 100,000 miles; and

   (2) A reasonable allowance for damage not attributable to normal wear and tear, but not to include damage resulting from a nonconformity.

d.  Refunds shall be made to the consumer, and lienholder, if any, as their interest may appear.

e.  No authorized dealer shall be held liable by the manufacturer for any refunds or automobile replacements in the absence of evidence indicating that dealership repairs have been carried out in a manner inconsistent with the manufacturer's instructions.  (64 Del. Laws, c. 173 § 1; 66 Del. Laws, c. 36, §3).

51.    The Delaware Lemon Law, 6 Del. C. §5004 provides:

§5004.  PRESUMPTIONS

a.  It shall be presumed that a reasonable number of attempts have been undertaken to conform a new automobile to the manufacturer's express warranty if, within the warranty term or during the period of 1 year following the date of original delivery of the motor vehicle to a consumer, whichever is the earlier date:

(1) Substantially the same nonconformity has been subject to repair or correction 4 or more times by the manufacturer, its agents or its dealers and the nonconformity continues to exist; or

(2) The automobile is out of service by reason of repair or correction of a nonconformity by the manufacturer, its agents or its dealers for a cumulative total of more than 30 calendar days since the original delivery of the motor vehicle to the consumer. This 30-day limit shall commence with the first day on which the consumer presents the automobile to the manufacturer, its agent or dealer for service of the nonconformity and a written document describing the nonconformity is prepared by the manufacturer, its agent or dealer.  The 30-day limit shall be extended only if repairs cannot be performed due to conditions beyond the control of the manufacturer, its agents or its dealers, including war, invasion, strike, fire, flood or other natural disaster.

b.  The presumption provided in this section shall not apply against a manufacturer unless the manufacturer has received prior direct written notification from or on behalf of the consumer and has had an opportunity to repair or correct the nonconformity; provided, however, that if the manufacturer does not directly attempt or arrange with its dealer or agent to repair or correct the nonconformity, the manufacturer may not defend a claim by a consumer under this chapter on the ground that the agent or dealer failed to properly repair or correct the nonconformity or that repairs or corrections made by the agent or dealer caused or contributed to the nonconformity.  (64 Del. Laws, c. 173, §1; 66 Del. Laws, c. 36, §4.)

52.    Plaintiff has satisfied or will have satisfied by time of trial the above presumption, as the vehicle has been or will have been subject to repair more than four (4) times for the same non-conformity, and the non-conformity remains uncorrected.

53.    The Plaintiff has satisfied or will have satisfied by time of trial the above presumption as the vehicle has or will be in the future out of service by reason of the non-conformities complained of for a cumulative total of

thirty (30) days or more. *See* The Delaware Lemon Law, 6 <u>Del</u>. <u>C</u>. §5004 (1)(2).

54.    Plaintiff has delivered the non-conforming vehicle to an authorized service and repair facility of the manufacturer on numerous occasions.  After a reasonable number of attempts, the manufacturer was unable to repair the non-conformities.

55.    The vehicle continues to exhibit defects and nonconformities, which substantially impair its use, value, and/or safety as provided by the Lemon Law.

56.    The non-conformities listed above substantially impair the value of the subject motor vehicle and continue to exist even after a reasonable number of repair attempts by the Defendants.

57.    Plaintiff has been and will continue to be financially damaged due to Defendant's intentional, reckless, wanton and negligent failure to comply with the provisions of The Lemon Law.

58.    Pursuant to The Delaware Lemon Law, Plaintiff seeks relief for losses due to the non-conformities and defects in the above-mentioned vehicle in addition to reasonable attorney fees and all court costs.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant in an amount equal to the price of the subject vehicle, plus all

collateral charges, incidental and consequential damages, reasonable attorney's fees, interest from the date of the warranty breach, costs including but not limited to court costs, post judgment interest, and any other relief deemed by this court to be equitable and just.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST INTERMECCANICA INTERNATIONAL, INC., ELECTRAMECCANICA and AUTO EUROPE, INC. -d.b.a- INTERMECCANICA – US– DELAWARE AUTOMOBILE MAGNUSON-MOSS (FTC) WARRANTY IMPROVEMENT ACT

59.     Plaintiff hereby incorporates all facts and allegations set forth in this Complaint by reference as if fully set forth at length herein.

60.     Plaintiff is a "Consumer" as defined by 15 U.S.C. §2301(3).

61.     Defendants are a "supplier", "warrantor", and a "service contractor" as defined by 15 U.S.C. § 2301 (4),(5) and (8).

42.     The subject vehicle is a "consumer product" as defined by 15 U.S.C. § 2301(1).

62.     By the terms of its written warranties, affirmations, promises, or service contracts, Defendants agreed to perform effective repairs at no charge for parts and/or labor.

63.     The Magnuson-Moss Warranty Improvement Act requires Defendants to be bound by all warranties implied by state law. Said warranties are imposed on all transactions in the state in which the vehicle was delivered.

64.    Defendants have made attempts on several occasions to comply with the terms of its express warranties; however, such repair attempts have been ineffective.

65.    The Magnuson-Moss Warranty Improvement Act, 15 U.S.C. §2310(d)(2) provides:

If a consumer finally prevails on an action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the amount of aggregate amount of costs and expenses (including attorney fees based upon actual time expended), determined by the court to have been reasonably incurred by the Plaintiff for, or in connection with the commencement and prosecution of such action, unless the court, in its discretion shall determine that such an award of attorney's fees would be inappropriate.

66.    Plaintiff has afforded Defendants a reasonable number of opportunities to conform the vehicle to the aforementioned express warranties, implied warranties and contracts.

67.    As a direct and proximate result of Defendant's failure to comply with the express written warranties, the Defendants have breached said warranties, have violated the Magnuson-Moss Warranty Improvement Act, the Plaintiff has suffered damages and, in accordance with 15 U.S.C. §2310(d)(1), the Plaintiff is entitled to bring suit for such damages and other legal and equitable relief.

68.    At the time of obtaining possession of the vehicle and at all times subsequent thereto, Plaintiff has justifiably relied upon Defendant's express

warranties and implied warranties of fitness for a particular purpose and implied warranties of merchantability.

69.    At the time of obtaining possession of the vehicle and at all times subsequent thereto, Defendants were aware Plaintiff was relying upon Defendant's express and implied warranties, obligations, and representations with regard to the subject vehicle.

70.    Plaintiff has incurred damages as a direct and proximate result of the breach and failure of Defendant to honor its express and implied warranties.

71.    Such damages include, but are not limited to, the sales price of the vehicle plus all collateral charges, including attorney fees and costs, as well as other expenses, the full extent of which are not yet known.

72.    Plaintiff avers that upon successfully prevailing upon the Magnuson-Moss claim herein, all attorney fees are recoverable and are demanded against Defendants.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant in an amount equal to the price of the subject vehicle, plus all collateral charges, incidental and consequential damages, reasonable attorney's fees, interest from the date of the warranty breach, costs including but not limited to court costs, post judgment interest, and any other relief deemed by this court to be equitable and just.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST INTERMECCANICA INTERNATIONAL, INC.,
## ELECTRAMECCANICA and AUTO EUROPE, INC. -d.b.a-
## INTERMECCANICA – US–:
## DELAWARE TITLE 6 Chapter 25 § 2513;
## COMMERCE AND TRADE PROHIBITED PRACTICES

73.     Plaintiff hereby incorporates all facts and allegations set forth in this

Complaint by reference as if fully set forth at length herein.

74.     Plaintiff is a "Person" as defined by 6 Del. C. §2511(7).

75.     Defendants are "Persons" as defined by 6 Del. C. §2511(7).

76.     Section 5009 of the Delaware Lemon Law, provides that a violation of

its provisions shall automatically constitute a violation of the Delaware

Consumer Fraud Act, 6 Del. C. §2511 *et seq.*

77.     In addition, the Consumer Fraud Act, 6 Del. C. §2513 (a).defines an

"unlawful practice" as:

> [t]he act, use or employment by any person of any deception, fraud, false
> pretense, false promise, misrepresentation, or the concealment, suppression,
> or omission of any material fact with intent that others rely upon such
> concealment, suppression or omission, in connection with the sale, lease or
> advertisement of any merchandise, whether or not any person has in fact
> been misled, deceived or damaged thereby…

78.     Plaintiff avers Defendants have violated this provision, as well as others

of 6 Del. C. §2511 *et seq.*

79.     Defendant's failure to comply with the warranties provided to the

Plaintiff falls within the aforementioned definition of an "unlawful practice".

WHEREFORE, Plaintiff respectfully demands judgment against Defendant in an amount equal to the price of the subject vehicle, plus all collateral charges, incidental and consequential damages, reasonable attorney's fees, interest from the date of the warranty breach, costs including but not limited to court costs, post judgment interest, and any other relief deemed by this court to be equitable and just.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST INTERMECCANICA INTERNATIONAL, INC., ELECTRAMECCANICA and AUTO EUROPE, INC. -d.b.a- INTERMECCANICA – US– UNIFORM COMMERCIAL CODE

80.    Plaintiff hereby incorporates all facts and allegations set forth in this Complaint by reference as if fully set forth at length.

81.    The defects and nonconformities existing within the vehicle constitute a breach of contractual and statutory obligations of Defendants, including but not limited to the following sections of the Delaware Uniform Commercial Code:

a) Express Warranty. *See* Delaware Uniform Commercial Code, U.C.C. §2-313 (1);

b) Implied Warranty of Merchantability. *See* Delaware Uniform Commercial Code, U.C.C. §2-314 (1); and

c) Implied Warranty of Fitness For A Particular Purpose. *See* Delaware Uniform Commercial Code, U.C.C. §2-315 (1).

82.     At the time of obtaining possession of the vehicle and at all times subsequent thereto, Plaintiff has justifiably relied upon Defendant's express warranties and implied warranties of fitness for a particular purpose and implied warranties of merchantability.

83.     At the time of obtaining possession of the vehicle and at all times subsequent thereto, Defendants were aware that Plaintiff was relying upon Defendant's express and implied warranties, obligations, and representations with regard to the subject vehicle.

84.     Plaintiff has incurred damages as a direct and proximate result of the breach and failure of Defendant to honor its express and implied warranties.

85.     Such damages include, but are not limited to, the contract price of the vehicle plus all collateral charges, incidental and consequential damages, attorney's fees and costs, as well as other expenses, the full extent of which are not yet known.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant in an amount equal to the price of the subject vehicle, plus all collateral charges, incidental and consequential damages, reasonable attorney's fees, interest from the date of the warranty breach, costs including

but not limited to court costs, post judgment interest, and any other relief deemed by this court to be equitable and just.

**AS AND FOR A FIFTH CAUSE OF ACTION
AGAINST INTERMECCANICA INTERNATIONAL, INC.,
ELECTRAMECCANICA and AUTO EUROPE, INC. -d.b.a-
INTERMECCANICA – US–
BREACH OF THE DELAWARE CONSUMER CONTRACT STATUTE**

86.     Plaintiffs incorporate their allegations in all the foregoing paragraphs as though set forth at length herein.

87.     Plaintiff is a "consumer" as that term is defined under the Consumer Contracts Act, 6 <u>Del</u>. <u>C</u>. §2731 (3) *et seq.*

88.     Defendants sold "merchandise" to Plaintiff, namely, the vehicle described above. *See* Consumer Contracts Act, 6 <u>Del</u>. <u>C</u>. §2731 (6).

89.     Defendants are "persons" as defined under the Consumer Contracts Act, 6 <u>Del</u>. <u>C</u>. §2731 (7) *et seq.*

90.     Defendants engaged in concert to cause a "sale" of a vehicle to Plaintiff as that term is defined by the Consumer Contracts Act, 6 <u>Del</u>. <u>C</u>. §2731 (8) *et seq.*

91.      Section 2732 of the Consumer Contract Act provides that a violation of that section, pursuant to a contract for the sale of merchandise – here, the above-referenced vehicle – in a knowing or reckless manner results in a "deceptive practice." *See* 6 <u>Del</u>. <u>C</u>. §2732.

92.   That section states –

§ 2732. Deceptive practices in consumer contracts.

In a contract for the sale or lease of merchandise to a consumer, a person engages in a deceptive practice when that person knowingly or recklessly:

(1) Distorts or obscures the terms, conditions or meaning of the contract or creates a likelihood of confusion or misunderstanding by the use of unintelligible words, phrases or sentences; or

(2) Omits information required by law to be disclosed in contracts with a consumer; or

93.   Plaintiff avers that Defendants have violated Section 2732 (1) in all the manners setout above from paragraphs 2 through 109, and in particular by deception in sale as averred in paragraphs 32, 34 and 47 of this Complaint.

94.   Plaintiff avers that Defendants have violated Section 2732 (2) in all the manners set out from paragraph 2 through 109 and in particular by deception in sale as averred in paragraphs 27, 32-34, 42, 47-48 and 59 of this Complaint.

95.   As a result, Defendants Auto Europe, Intermeccanica and Electrameccanica engaged in deceptive practice pursuant to 6 *Del.C.* § 2731(1) and 2732 (2).

96.   Pursuant to 6 *Del. C.* § 2734, a person who engages in a deceptive practice is liable to the Plaintiff in an amount equal to treble the amount of actual damages proved, in addition to reasonable attorney's fees.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant in an amount equal to the price of the subject vehicle, plus all

collateral charges, incidental and consequential damages, reasonable attorney's fees, interest from the date of the warranty breach, costs including but not limited to court costs, post judgment interest, and any other relief deemed by this court to be equitable and just.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST INTERMECCANICA INTERNATIONAL, INC., ELECTRAMECCANICA and AUTO EUROPE, INC. -d.b.a- INTERMECCANICA – US– NEGLIGENCE

97.    Plaintiff incorporates all of the foregoing paragraphs as though set forth at length herein.

98.    Defendants individually and collectively had a duty to ensure they sold a commercially viable product that was free of defects.

99.    Defendants violated that duty when they negligently sold a defective product and failed to either remedy the defect or return the money that had exchanged hands.

100.   By failing to remedy the defects narrated in the paragraphs above or return the purchase money, Defendants have caused injury to Plaintiff who is unable to obtain the benefit of the bargain promised by Defendants for which he paid nearly $100,000.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant in an amount equal to the price of the subject vehicle, plus all

collateral charges, incidental and consequential damages, reasonable attorney's fees, interest from the date of the warranty breach, costs including but not limited to court costs, post judgment interest, and any other relief deemed by this court to be equitable and just.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**AGAINST INTERMECCANICA INTERNATIONAL, INC.,**
**ELECTRAMECCANICA and AUTO EUROPE, INC. -d.b.a-**
**INTERMECCANICA – US–**
**FRAUD**

101.   Plaintiff incorporates all the foregoing paragraphs here as though they were realleged.

102.   Plaintiff purchased the vehicle from Defendants for personal, family or household purposes.

103.   Through their actions and omissions, Defendants made materially false representations about the quality, performance and reliability of the Vehicle they sold to him, and that it was a defect free vehicle fit for the purposes it was advertised and promised to Plaintiff.

104.   However, Defendants actively concealed the serious defects with the vehicle, including its vastly inferior and historically malperforming fuel injection system, which rendered the Vehicle, along with other defects, worthless to Plaintiff as variously described in the foregoing paragraphs, and in particular paragraphs 27, 32-34, 42, 47-48 and 59 of this Complaint.

105.   By their affirmative acts of selling the vehicle while omitting to disclose known defects with the vehicle's fuel injection system, Plaintiff was misled by their active and inferred misrepresentation.

106.   Paragraphs 27, 32-34, 42, 47-48 and 59 of this Complaint together with other paragraphs demonstrate that Defendants made false representations, concealed material information related to the performance and vital components of the Vehicle and/or failed to correct their active misrepresentations that the Vehicle sold to Plaintiff was defective from the outset of the sale, and that their promises of its superior performance were false, or made with reckless indifference to the truth.

107.   By this course of action, it was the collective intention of Defendants that Plaintiff would purchase the Vehicle knowing fully well that they had sold him a defective Vehicle as alleged in paragraphs 27, 32-34, 42, 47-48 and 59 of this Complaint.

108.   Plaintiff, unaware of the duplicity of the executives of the Defendants who sold him a defective vehicle, reasonably relied upon the fraudulently issued statements and promises made by Defendants of the Vehicle's performance and that he was receiving the benefit of his bargain – a functional Porsche Replica that would perform as well as it was touted.

109.   The damage to Plaintiff by his reasonable reliance upon the promises and duplicitous conduct of Defendants is palpable from all the foregoing paragraphs in that his Vehicle has, and continues to be unroadworthy, having become a $100,000 albatross to Plaintiff.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant in an amount equal to the price of the subject vehicle, plus all collateral charges, incidental and consequential damages, reasonable attorney's fees, interest from the date of the warranty breach, costs including but not limited to court costs, post judgment interest, and any other relief deemed by this court to be equitable and just.

## AS AND FOR A EIGHTH CAUSE OF ACTION AGAINST INTERMECCANICA INTERNATIONAL, INC., ELECTRAMECCANICA and AUTO EUROPE, INC. -d.b.a- INTERMECCANICA – US– PUNITIVE DAMAGES

110.   Plaintiff incorporates all the foregoing paragraphs here as though they were realleged here.

WHEREFORE, Plaintiff respectfully demands judgment against Defendant in an amount equal to the price of the subject vehicle, plus all collateral charges, incidental and consequential damages, reasonable attorney's fees, interest from the date of the warranty breach, costs including but not limited to court costs, post judgment interest, and any other relief deemed by this court to be equitable and just.

KIMMEL & SILVERMAN, P.C.

*/s/ Mary Higgins*
MARY HIGGINS, ESQUIRE
Attorney for Plaintiffs (ID No: 4150)
Silverside Executive Center
501 Silverside Rd., Suite 118
Wilmington, DE 19809
Phone (302) 791-9373
Fax (302) 791-9476

*Attorneys for Plaintiff, Donald Wolfe*